# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JAMES SAKANE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,[1]<br><br>　　　　Defendant.<br>_____/ | Case No. 1:23-cv-00576-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I. INTRODUCTION

On April 13, 2023, Plaintiff Michael James Sakane ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10.)

**A.     Procedural History**

On February 28, 2020, Plaintiff protectively filed a claim for DIB payments, alleging he became disabled on December 15, 2019, due to congestive heart failure, type 2 diabetes, low thyroid condition, high blood pressure, sleep apnea, hypertension, hyperglycemia, and shortness of breath. (Administrative Record ("AR") 18, 140, 143, 152, 153, 154, 306, 310.) Plaintiff was born on January 23, 1976, and was 43 years old on the alleged disability onset date. (AR 28, 140, 152.) Plaintiff has a high school education and previously worked as gas station attendant. (AR 28, 129, 311, 773.)

The Commissioner denied Plaintiff's application for benefits initially on September 24, 2020, and again on reconsideration on June 3, 2021. (AR 169–73, 176–81.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 182–83.) On October 20, 2021, Plaintiff appeared without counsel or a representative and testified before an ALJ as to his work history and alleged disabling conditions. (AR 56–82.) A vocational expert ("VE") also testified at the hearing. (AR 82–93.)

**B.     The ALJ's Decision and Appeals Council Review**

On March 2, 2022, the ALJ issued a decision finding Plaintiff not disabled, as defined by the Act. (AR 18–30.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 20–30.) The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2026, and that, while he engaged in substantial gainful activity from December 15, 2019, to December 31, 2019, and from January 1, 2021, through December 31, 2021, there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity (step one). (AR 20–21.) The ALJ found that Plaintiff had the following severe impairments: cardiomyopathy, congestive heart failure with preserved ejection fraction, hypertension, diabetes mellitus, obstructive sleep apnea, atopic dermatitis, asthma, and obesity (step two). (AR 21–23.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 23–24.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and applied the RFC assessment at step four.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b), except he is able to climb ramps and stairs occasionally; he cannot climb ropes, ladders, or scaffolds. [Plaintiff] must avoid concentrated exposure to extremes of heat and cold.  He must avoid concentrated exposure to pulmonary irritants, such as dusts, gases, fumes, and pollens.  He must avoid concentrated exposure to workplace hazards such as unprotected heights or dangerous, moving mechanical parts.  [Plaintiff] cannot be required to wear latex or other gloves on the job.

(AR 24.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 25.)

Based on this RFC assessment, the ALJ determined that Plaintiff was not disabled because he could perform his past relevant work as an auto self-service attendant (step 4).  (AR 28.)  The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the local and national economies (step five).  (AR 28–29.)  In making this determination, the ALJ posed a series of hypothetical questions to the VE.  (AR 85–89.)  In response, the VE testified that a person with the specified RFC could perform the jobs of cashier II; ticket seller; and small product assembler.  (AR 87–88.)  When posed by the ALJ with a hypothetical that included additional limitations to Plaintiff's RFC of absences of two or more times per month or being off task more than 10 percent of the workday, the VE testified that there was no work such a person could perform.  (AR 89.)

Plaintiff sought review of the ALJ's decision before the Appeals Council.  Along with

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3

his request for review, Plaintiff submitted additional, post-hearing evidence to the Appeals Council consisting of X-ray and MRI imaging results of Plaintiff's spine, a medication list, and a mental source opinion dated March 26, 2022, by Plaintiff's treating provider Michael A. Layton, PA-C.  (AR 36–47.)

On March 2, 2023, the Appeals Council denied the request for review (AR 1–7), rendering the ALJ's decision the final decision of the Commissioner.  20 C.F.R. § 404.981.  The "Notice of Appeals Council Action" denying review sets forth the Appeals Council's finding that the post-hearing evidence "does not relate to the period at issue" and thus "does not affect the decision about whether [Plaintiff was] disabled beginning on or before March 2, 2022."  (AR 2.)

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable

of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).  "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for

that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

**IV.     DISCUSSION**

**A.     The ALJ's Decision is Not Supported by Substantial Evidence**

Plaintiff challenges the ALJ's decision on the basis, *inter alia*, that it fails to consider all of Plaintiff's mental and physical limitations in formulating the RFC, particularly in view of the May 13, 2022, and August 27, 2022, imaging results of Plaintiff's spine and the March 26, 2022, opinion of treater PA-C Layton (AR 36–47), which were submitted for the first time to the Appeals Council. (*See* Doc. 17 at 8–17.)

Where, as here, the Appeals Council considers additional evidence in denying review of the ALJ's decision, that evidence is nevertheless deemed to be part of the administrative record that a court must evaluate when reviewing the Commissioner's final decision for substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin*, 682 F.3d 1157, 1163 (9th Cir. 2012). *See also*

*Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error."). That the imaging results and PA-C Layton's opinion were rendered after the ALJ's decision is not dispositive; and this Court must consider new records that relate back to the time period at issue. *See, e.g., Taylor*, 569 F.3d at 1232-33 (holding that a psychiatric evaluation occurring after an ALJ's decision, but concerning a claimant's mental health since his alleged onset date, "related to the period before" the ALJ's decision and "should have been considered"); *Edgecomb v. Berryhill*, 741 F. App'x 390, 393 (9th Cir. 2018) ("The Appeals Council stated that the letter 'is about a later time,' but did not explain its conclusion beyond noting that the letter was dated February 2, 2015, and that the relevant period ended September 20, 2013. We must conduct our own review of the letter to determine if it relates to the relevant time period."); *Ward v. Colvin*, No. 2:13-CV-1390-EFB, 2014 WL 4925274, at *3 (E.D. Cal. Sept. 30, 2014) ("[T]he Ninth Circuit has held that medical evaluations made after the relevant time period—in this case the date of the ALJ's decision—are relevant where they concern the claimant's condition during the time period at issue.").

Regarding the May 13, 2022, and August 27, 2022, imaging results, while they document the state of Plaintiff's condition roughly two-to-five months after the ALJ's decision, their relevance is not limited to that timeframe. Since the results document a "degenerative" and "progressive" condition in Plaintiff's lumbar and thoracic spine, it stands to reason that these imaging results relate to a time before the date of the ALJ's decision. (*See* AR 37–39.) To conclude that the records document changes Plaintiff's condition only during the two-to-five months following the ALJ's decision would require that this Court ignore the degenerative and progressive nature of his condition. Similarly, PA-C Layton's opinion was issued on March 26, 2022—24 days after the ALJ's decision—yet it states that Plaintiff's condition has been "progressing" over his lifetime and the disabling impairments opined therein have been "lifelong." (AR 41, 42.) Since these new records relate to the relevant time period, the records should now be considered. *See, e.g., Aranda v. Comm'r of Soc. Sec.*, No. 2:19-CV-02567-JDP-

SS, 2021 WL 107157, at *3 (E.D. Cal. Jan. 12, 2021) (considering MRI and X-rays that, while conducted after the ALJ's decision, documented the plaintiff's "degenerative condition."); *Hernandez v. Berryhill*, No. 1:17-CV-00483-SKO, 2018 WL 2021021, at *6 (E.D. Cal. May 1, 2018) ("As already discussed, Dr. Graham's report was new, material, and relevant to the time period at issue before ALJ; thus, the Appeals Council was required to consider it.").

Since the imaging results and PA-C Layton's opinion relate to the relevant time period, this Court must determine whether the ALJ's decision retains support in substantial evidence, with this post-decision evidence included into the record as a whole. *See Taylor*, 659 F.3d at 1232. Based on the evidence available at the time of the ALJ's decision, the ALJ determined that while Plaintiff "testified to [a] prescription for and use of a back brace, the evidence does not show such prescription or physical findings accounting for the back brace." (AR 27.) However, the August 27, 2022, MRI lends support for the use of a back brace, showing a "central disc protrusion and extrusion superimposed on disc bulge" causing "severe compression of the thecal sac at L3-4," "moderate compression of the thecal sac at L4-5," "left lateral recess of the rotator cuff at L5-S1," "right lateral recess narrowed," and "moderate L5-S1 degenerative foraminal narrowing with exiting nerve roots in contact with the disc bulge." (AR 38.) These imaging results also undermine the "sit, stand, and walk limitations" opined by the State agency consultants, which the ALJ adopted as "consistent" with "observations of normal skeletal range of motion." (AR 27.)

PA-C Layton's March 26, 2022, opinion particularly relates to the ALJ's conclusions at step two. The ALJ found that the "overall record does not show that [Plaintiff] was observed by treatment providers having difficulties understanding, remembering, or applying information" and that "[t]reatment notes do not show that [Plaintiff] sought treatment reporting psychiatric symptoms affecting his abilities to maintain concentration, persistence, or pace, nor did treatment providers observe that [Plaintiff] had psychiatric symptoms limiting his abilities to maintain concentration, persistence, or pace." (AR 22–23.) However, PA-C Layton's opinion fills that evidentiary gap. He found that, due to Plaintiff's learning disability and attention deficit hyperactivity disorder ("ADHD"), he would be precluded from understanding and remembering

detailed instructions for 15% or more of an eight-hour workday; that he would be absent from work as a result of his impairments five days or more a month; and that he would be unable to complete an eight-hour workdays as a result of his impairments for five days or more a month. (AR 41–42.)  Notably, according to the VE, additional limitations to Plaintiff's RFC of absences of two or more times per month or being off task more than 10 percent of the workday would result in no work that he could perform.  (AR 89.)

Overall, considering the record as a whole, including the May 13, 2022, and August 27, 2022, imaging results and the March 26, 2022, opinion of PA-C Layton, the ALJ's conclusions about the extent of Plaintiff's limitations and the lack of evidence in support thereof are no longer supported by substantial evidence.  *See Krummel v. Kijakazi*, No. 1:22-CV-00048-SKO, 2023 WL 4209757, at *4 (E.D. Cal. June 27, 2023) ("With the addition of Dr. Pannu's opinion, the record now contains a medical opinion from a treating physician opining that Plaintiff's RFC was far more limited during the relevant period than that found by the ALJ . . . . Since this new evidence directly undermines the basis of the ALJ's decision, the Court concludes that the Commissioner's decision was not supported by substantial evidence.") (internal quotations omitted).  Remand is therefore warranted.

**B.    Remand for Further Proceedings is Appropriate**

It is for the ALJ to determine whether a plaintiff has severe impairments and, ultimately, whether they are disabled under the Act.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) ("[T]he decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  The ALJ, not the Court, is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Here, the ALJ did not have the opportunity to consider, in the first instance, the May 13, 2022, and August 27, 2022, imaging results of Plaintiff's spine and the March 26, 2022, opinion

of treater PA-C Layton. Having found this evidence properly part of the record, the ALJ must evaluate it to determine its impact on the severity of Plaintiff's impairments, his RFC, and the ultimate question of Plaintiff's disability. Remand for further proceedings—as Plaintiff concedes (*see* Doc. 17 at 16)—is therefore the appropriate remedy. *See, e.g., Vasquez v. Astrue,* 572 F.3d 586, 597 (9th Cir. 2009) (remanding to allow ALJ to assess results of psychological testing, considered by the Appeals Council, and how claimant's limitations affect their RFC); *McLaughlin v. Saul,* No. 1:18-CV-00967-SKO, 2019 WL 3202806, at *6 (E.D. Cal. July 16, 2019); *Billie-Jo M. v. Saul*, No. 6:19-CV-00092-SB, 2020 WL 2521754, at *10 (D. Or. May 18, 2020) ("Plaintiff submitted new, post-decision medical evidence that the ALJ has not had an opportunity to evaluate. Under these circumstances, a remand to the agency for further proceedings to fully develop the record is the appropriate remedy.") (internal quotation marks omitted).

C.  **The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to consider Plaintiff's post-decision evidence, the Court does not reach Plaintiff's additional assertions of error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Franz v. Comm'r of Soc. Sec.*, No. 2:21-CV-583-KJN, 2022 WL 4537991, at *7 (E.D. Cal. Sept. 28, 2022) ("Given that the proper remedy is to allow the ALJ to consider Dr. Vega's opinion on remand, and given the intertwined nature of plaintiff's other arguments, the undersigned declines to reach them."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

V.  **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter

judgment in favor of Plaintiff Michael James Sakane and against Defendant Martin O'Malley, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **January 31, 2024**                    /s/ *Sheila K. Oberto*
                                                                           UNITED STATES MAGISTRATE JUDGE